**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

**LUFKIN DIVISION**

M.D., AN INDIVIDUAL, Case No.

Plaintiff,

vs.

G6 HOSPITALITY PROPERTY LLC,

Defendant.

**COMPLAINT FOR DAMAGES;**

**DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff M.D. by and through the undersigned counsel and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1. This action for damages is brought by M.D. ("Plaintiff"), a survivor of sex trafficking who was trafficked both as a minor and as an adult, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. G6 HOSPITALITY PROPERTY LLC ("Defendant") was the hotel owner and hotel operator of two subject hotel premises, both operating as Motel 6: (1) located at 2741 Freeway Blvd, Brooklyn Center, MN 55430 ("Brooklyn Center Hotel"); and (2) located at 2300 Cleveland Ave N, Roseville, MN 55113 ("Roseville Hotel"), during the relevant time period, and as such was

responsible for both subject hotels during the time period Plaintiff was sex trafficked on said premises.

3. Defendant was the owner and operator of the Brooklyn Center Hotel located at 2741 Freeway Blvd, Brooklyn Center, MN 55430 during the relevant time periods.

4. Defendant was the owner and operator of the Roseville Hotel located at 2300 Cleveland Ave N, Roseville, MN 55113 during the relevant time periods.

5. Plaintiff was trafficked at 2741 Freeway Blvd, Brooklyn Center, MN 55430 from 2014 through and inclusive of 2022.

6. Plaintiff was trafficked at 2300 Cleveland Ave N, Roseville, MN 55113 during the relevant time periods within the 2014 through 2022 trafficking period.

7. During the relevant time periods, Defendant was owner and operator of both subject premises.

8. Plaintiff was born in 1998.

9. Plaintiff meets the definition of a sex trafficking victim under the TVPRA. Plaintiff's trafficking began at the Brooklyn Center Hotel in 2014 when she was a minor, fifteen (15) to sixteen (16) years of age. Plaintiff turned eighteen (18) years old in March 2016 while she was being actively sex trafficked at the subject hotels. Accordingly, Plaintiff was trafficked at both subject hotels as a minor from 2014 through March 2016, and as an adult from March 2016 through and inclusive of 2022, during which time she was induced by her traffickers to have sex with sex buyers on Defendant's subject premises — as a minor without any requirement of force, fraud, or coercion, and as an adult through force, fraud, and coercion, including physical assault and forced ingestion of controlled substances.

10. As a hotel owner and hotel operator of both subject properties, Defendant controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject properties where Plaintiff was sex trafficked.

11. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

12. Years before Plaintiff was trafficked, Defendant knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

13. Section 1591 of the TVPRA criminalizes sex trafficking by force, fraud or coercion, and separately criminalizes the sex trafficking of minors under the age of eighteen regardless of whether force, fraud, or coercion is established. See 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the traffickers who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the traffickers who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should

have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil defendant.

## **PARTIES**

14. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained in this Complaint to protect the safety, privacy and identity of this subject sex trafficked victim. Nationwide similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

15. Plaintiff is currently a resident of Minnesota.

16. At all times relevant and material, Defendant owned and operated hotels doing business as Motel 6 at: (a) 2741 Freeway Blvd, Brooklyn Center, MN 55430; and (b) 2300 Cleveland Ave N, Roseville, MN 55113, and was authorized to do, licensed to do, and was doing business in the aforesaid State offering both subject hotels as places of public lodging.

17. The principal place of business of Defendant is 4100 International Pkwy, Carrollton, TX 75007.

## **JURISDICTION AND VENUE**

18. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and/or Defendant conducts business within this District pursuant to 28 U.S.C. § 1391(b).

20. The principal place of business of Defendant G6 HOSPITALITY PROPERTY LLC is located at 4100 International Pkwy, Carrollton, TX 75007 within the Eastern District of Texas. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

21. As the hotel owner and hotel operator during the relevant time period for both subject properties, Defendant G6 HOSPITALITY PROPERTY LLC, (headquartered at 4100 International Pkwy, Carrollton, TX 75007, within the Eastern District of Texas), controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject properties where Plaintiff was sex trafficked.

## CAUSE OF ACTION

## VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

22. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against Defendant.

23. At all relevant times, Defendant, as owner and operator of both subject hotels, was involved in the staffing and operation of Defendant's subject hotels where Plaintiff was trafficked for sex both as a minor and as an adult during the relevant aforesaid time periods.

24. Plaintiff was trafficked by multiple traffickers, including: (1) Anton, a Minneapolis man subsequently convicted on March 31, 2023, in the United States District Court for the District of Minnesota, of one count of conspiracy to commit sex trafficking of other minors and five counts of sex trafficking of other minors, and sentenced to 252 months in federal prison; and (2) a member of the Black Disciples street gang (hereinafter "BD Trafficker"). Whether and to what extent these traffickers acted in concert at the subject hotel premises will be further informed through discovery. During the trafficking period, the BD Trafficker had an ongoing sexual relationship with a young Hispanic female front desk employee at the Brooklyn Center Hotel who, upon

information and belief, was complicit in facilitating the trafficking operation occurring on the premises.

25. Rooms were rented by the Traffickers or at the direction of the Traffickers at both the Brooklyn Center Hotel and the Roseville Hotel and used for the sex trafficking of the Plaintiff. During the relevant time period, the Traffickers maintained between one and two rooms at each subject hotel and trafficked Plaintiff alongside two to four other victims simultaneously. Plaintiff remained at the subject hotels for extended periods—at times for months—during each trafficking stay.

26. Discovery will inform whether the Traffickers, (or individuals at the Traffickers' direction), booked rooms at both subject hotels that were used for the sex trafficking of the Plaintiff in violation of the TVPRA:

a. Under the registrant's proper legal name or a false name;

b. Whether cash, prepaid card, debit card or credit card was used at the time of respective booking or renewal; and

c. Whether staff of Defendant required for each booking that the renter show their identification.

27. Defendant knowingly benefited from the sex trafficking of Plaintiff at both of Defendant's hotels by receiving payment for the rooms rented by her Traffickers (or at the direction of her Traffickers) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA during the aforesaid relevant time periods.

28. Defendant rented rooms at both subject hotels to individuals it knew or should have known were engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

29. Plaintiff's Traffickers used proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for rooms rented at both subject hotels during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

30. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur, as Plaintiff was advertised by her Traffickers online through websites including Backpage, Craigslist, and Mega-Personal, and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

31. During the relevant time period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Traffickers that violated the TVPRA as to the Plaintiff herein.

32. Operating hotels and renting out rooms is an enterprise involving risk and potential profit.

33. Defendant operating both subject hotels and renting out rooms to Plaintiff's Traffickers was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

34. Defendant G6 HOSPITALITY PROPERTY LLC's association with the Plaintiff's sex Traffickers was a venture because Plaintiff's Traffickers had prior commercial dealings with said Defendant at both subject hotel premises by means of rooms repeatedly rented by the Traffickers (or at the direction of the Traffickers) during the time period of Plaintiff's trafficking, which Defendant knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit.

35. Defendant's repeated rental of rooms to Plaintiff's Traffickers (or individuals renting at the direction of the Traffickers) at both subject hotels was not a standard arm's length transaction, but rather the repeated room rental transactions which occurred during the time that Plaintiff was

trafficked at both subject hotels were colored by overt indicators of sex trafficking such that Defendant knew, or should have known, that Defendant was renting rooms to individuals engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

36. A continuous business relationship existed between Defendant's hotels, its agents, employees and staff, and Plaintiff's Traffickers' sex trafficking business, in part, in that Defendant provided assistance, support, or facilitation to the Plaintiff's Traffickers at both subject hotels by repeatedly renting rooms to individuals they knew or should have known were involved in sex trafficking on the premises in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the venture's success.

37. Defendant knowingly benefited from this venture, or enterprise, involving risk and potential profit, which was in violation of the TVPRA as to the Plaintiff herein, by receiving payment for the rooms rented by Plaintiff's Traffickers (or at the direction of her Traffickers) at both subject hotels that were used for sex trafficking, including as to the Plaintiff, during the aforesaid relevant time periods.

38. Defendant participated in a venture by operating both subject hotels and renting rooms to individuals that said Defendant knew or should have known were involved in sex trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

39. Defendant participated in a venture that said Defendant knew or should have known was trafficking Plaintiff at Defendant's hotels in violation of the TVPRA.

40. This Defendant knew or should have known that the undertaking or venture violated the TVPRA as to the Plaintiff.

41. Defendant knew or should have known about the nature of the sex trafficking occurring at both of Defendant's subject hotels, including as to the Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

a. Constant foot traffic of sex buyers to the Traffickers' rented rooms to have sex with Plaintiff at both subject hotels;

b. Plaintiff was visible to Defendant's staff at both subject hotels on hotel grounds and during direct interactions, appearing visibly young—a minor—wearing sexually explicit and revealing clothing, and bearing visible bruising consistent with physical abuse; Plaintiff's youth and visible indicators of trafficking were apparent to Defendant's staff, as Plaintiff was a teenager in the presence of men, typically in their late thirties and forties who were sex buyers;

c. Plaintiff was trafficked, at times, alongside two to four other women at both subject hotels in a manner consistent with organized commercial sex trafficking, with the Traffickers maintaining between one and two rooms simultaneously for that purpose at each property;

d. Plaintiff's Traffickers physically assaulted Plaintiff on the subject premises, including punching Plaintiff and, on at least one occasion, filling a bathtub with water and attempting to drown Plaintiff; these incidents of violence were audible to Defendant's staff, who were within earshot of screaming and physical altercations;

e. At the Brooklyn Center Hotel specifically, Defendant's staff, upon being alerted to screaming and physical fights, would enter the area of the disturbance but failed to evict the Traffickers or otherwise intervene to protect Plaintiff; staff demonstrated awareness of

and indifference to the ongoing trafficking, responding only when law enforcement was imminent;

f. A female front desk employee at the Brooklyn Center Hotel, a young Hispanic woman in her early twenties, was in a sexual relationship with Plaintiff's BD Trafficker and, upon information and belief, was aware of and complicit in the trafficking operation; this employee's relationship with the BD Trafficker further enabled the continuous rental of rooms and facilitation of the sex trafficking venture at that location;

g. Plaintiff was forced to ingest controlled substances including marijuana, alcohol, and rohypnol (roofies) by her Traffickers, and the Traffickers also actively sold and distributed controlled substances on the subject premises;

h. Inside the hotel rooms rented by the Traffickers (or at the direction of the Traffickers) at both subject hotels there were suspicious people and suspicious items including controlled substances, drug paraphernalia, condoms, condom wrappers, lingerie, and cash, which were observed by housekeeping staff or should have been so observed; items in the rooms were frequently broken and blood was present on room furnishings and surfaces as a result of the physical violence occurring therein;

i. Plaintiff's rooms at both subject hotels exhibited signs of commercial sex work;

j. Plaintiff was forced to solicit on the premises of both subject hotels;

k. Plaintiff's Traffickers advertised Plaintiff for commercial sex acts online through websites including Backpage, Craigslist, and Mega-Personal using Wi-Fi available at both subject hotels;

l. Other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at both hotels.

42. Defendant's staff at both subject hotels witnessed and observed on a regular and frequent basis signs and indicators of sex trafficking including items set forth in paragraph 41 above.

43. When being trafficked at both subject hotels from 2014 through and inclusive of 2022, Plaintiff interacted with Defendant's staff on a frequent basis, and Defendant's staff witnessed and observed Plaintiff, her Traffickers, as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

44. Plaintiff knows that some of the individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

45. Defendant's culpability is heightened by the fact that Plaintiff was a minor when her trafficking at the subject hotels began. Under 18 U.S.C. § 1591(a), the sex trafficking of a minor under the age of eighteen is a violation of the TVPRA regardless of whether force, fraud, or coercion is established. Defendant knew or should have known that Plaintiff was a minor based on her youthful appearance, the observable age disparity between Plaintiff and the adult male sex buyers, and the overt indicators of trafficking described herein.

46. Defendant's involvement and failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate

and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at both subject hotels and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being subjected to physical violence, forced drug use, and coercive control by her Traffickers.

47. This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guest's behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

48. Plaintiff being sex trafficked at Defendant's subject hotels was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

49. As a direct and proximate result of Defendant's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at both hotel properties, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at both of Defendant's subject hotels in violation of the TVPRA.

50. As a consequence of being sex trafficked at both subject hotels, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological

injuries as the result of being trafficked and sexually exploited at the subject hotels in violation of 18 U.S.C. §1591.

## TOLLING OF LIMITATIONS

51. Plaintiff was under the control, coercion, and manipulation of her Traffickers through at least 2022, and as a result, Plaintiff lacked the information and capacity to understand her injuries and their legal causes.

52. Thus, Plaintiff did not discover and could not reasonably have discovered the legal cause of her injury—through no fault of her own—lacked the information and understanding to bring a claim because she did not know both her injury and the cause of her injury. This lack of information was a direct result of Plaintiff being kept under the control, coercion, and manipulation of her Traffickers, which Defendant facilitated.

53. At the time Plaintiff was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being "trafficked" at Defendant's hotels or that she was a person "trafficked," much less that she was the "victim" of a legal venture involving Defendant, and she did not discover and was not in a position to discover the legal cause of her injury for years after her trafficking ended.

54. To the extent Defendant asserts an affirmative defense of limitations, Plaintiff invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, Plaintiff faced extraordinary circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before Plaintiff filed this lawsuit.

55. While under the control of her Traffickers through at least 2022, Plaintiff did not have the freedom to investigate her claims, to identify those responsible, or to seek legal representation

necessary to pursue her legal rights. Plaintiff could not have pursued her claims while under the active control of her Traffickers despite the exercise of ordinary diligence.

56. To the extent Defendant asserts an affirmative defense of limitations, Plaintiff invokes the continuing violation doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendant.

57. Plaintiff was subject to continuous trafficking at both subject hotels through at least 2022, which is not more than 10 years before Plaintiff brings this lawsuit.

58. This continuous trafficking resulted from Defendant's facilitation of trafficking at both subject hotels as described above.

59. The TVPRA's ten-year limitations period, 18 U.S.C. § 1595(c), is subject to equitable tolling. See, Arellano v. McDonough, 598 U.S. 1, 6–7 (2023), in which the court emphasized the "hornbook law" presumption that federal statutes of limitations are subject to tolling unless Congress clearly states otherwise. See also, Doe v. G6 Hospitality Franchising LLC et al, No. 3:2025-cv-00770 - Document 53 (N.D. Tex. 2025).

60. Furthermore, Plaintiff's minority status during the initial period of trafficking additionally supports tolling. Plaintiff's claims in that regard are timely pursuant to the Eliminating Limits to Justice for Child Sex Abuse Victims Act of 2022, Pub. L. No. 117-176, which eliminated the statute of limitations for federal civil claims under 18 U.S.C. § 2255 for victims who were minors at the time of the offense. Plaintiff's claims were not time-barred as of September 15, 2022, and therefore no statute of limitations applies.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against Defendant as identified in the above-referenced Count and as follows:

a. All available compensatory damages for the described losses with respect to the above cause of action;

b. Past and future emotional distress;

c. Consequential and/or special damages;

d. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e. Physical pain and suffering

f. Disgorgement of profits obtained through unjust enrichment;

g. Restitution;

h. All damages allowable under the TVPRA;

i. Reasonable and recoverable attorney's fees;

j. Punitive damages with respect to each cause of action;

k. Costs of this action; and

l. Pre-judgement and all other interest recoverable

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 13, 2026

RESPECTFULLY SUBMITTED,

/s/ Jason Byrd
Jason Byrd
THE BYRD LAW FIRM
448 Orleans
Beaumont, TX 77701

Telephone: (409) 924-0660
Facsimile: (409) 924-0035
jason@txbyrd.com

Randolph Janis
Randolph Janis, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky
Chloe Makowsky, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

Attorneys for Plaintiff